UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | |
|---|---|
| TONYA A. JOHNSON, § | |
| Plaintiff, § | |
| § | |
| v. § | Case # 1:18-cv-612-DB |
| § | |
| COMMISSIONER OF SOCIAL SECURITY, § | MEMORANDUM DECISION |
| § | AND ORDER |
| Defendant. § | |

## INTRODUCTION

Plaintiff Tonya A. Johnson ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned, in accordance with a standing order (*see* ECF. No. 19).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 12, 15. Plaintiff also filed a reply. *See* ECF No. 18. For the reasons set forth below, Plaintiff's motion (ECF No.12) is **DENIED**, and the Commissioner's motion (ECF No. 15) is **GRANTED**.

## BACKGROUND

On June 8, 2015, Plaintiff protectively filed a Title II application for a period of disability and DIB, alleging disability beginning on February 28, 2015 (the disability onset date), due to: back pain with leg pain; migraine headaches; asthma; depression and anxiety; and obesity. Transcript ("Tr.") 311. Plaintiff's application was denied initially on August 23, 2015, after which she requested an administrative hearing. Plaintiff's hearing was held via video before

Administrative Law Judge Julia D. Gibbs (the "ALJ") on November 29, 2016. The ALJ presided over the hearing from Alexandria, Virginia. Tr. 115. Plaintiff appeared and testified from Rochester, New York, and was represented by Amanda R. Jordan, an attorney. *Id*. Nicholas Fidanza, a vocational expert ("VE"), also appeared and testified at the hearing. *Id*. The ALJ issued an unfavorable decision on April 7, 2017, finding Plaintiff not disabled. Tr. 115-25. On May 4, 2018., the Appeals Council denied Plaintiff's request for further review. Tr. 1-4. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her April 7, 2017 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020;

2. The claimant has not engaged in substantial gainful activity since February 13, 2015, the alleged onset date (20 CFR 404.1571 *et seq*.);

3. The claimant has the following severe impairments: lumbar spine disorder, asthma, and migraine headaches (20 CFR 404.1520(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526);

5. The claimant has the residual functional capacity to perform sedentary work[1] as defined in 20 CFR 404.1567(a) except the claimant needs a cane for ambulating long distances and needs an opportunity to stand for a few minutes after sitting for 45 minutes. The claimant is limited to no more than occasional bending, kneeling, or squatting. The claimant is further limited to frequent use of the hands for lifting, carrying, fingering, and grasping. The claimant must also avoid exposure to environmental irritants such as gases, pollen, and chemicals. Finally, the claimant is precluded from ambulating on uneven terrain;

6. The claimant is capable of performing past relevant work as a benefits clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565);

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 13, 2015, through the date of this decision (20 CFR 404.1520(1)).

Tr. at 115-25.

Accordingly, the ALJ determined that, for the application for a period of disability and disability insurance benefits, protectively filed on June 8, 2015, Plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act. *Id*. at 125.

---

[1] "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

## **ANALYSIS**

Plaintiff asserts two points of error: (1) the ALJ failed to properly evaluate the severity of Plaintiff's mental impairments; and (2) the ALJ failed to properly weigh the opinions of Naghmeh Rajaee, M.D. ("Dr. Rajaee") (Tr. 971-972), Physical Therapist Joseph DiRienzo[2] ("PT DiRienzo") (*id.*), and Physician Assistant Michael ("PA Rudzinski") (Tr. 1107). *See* ECF No. 12-1 at 1.

### I. The ALJ Properly Found That Plaintiff's Mental Impairments Were Not Severe.

As to the first point of error, Plaintiff takes issue with the ALJ's finding at step two that Plaintiff's "depression" was non-severe. *Id*. at 21 (citing Tr. 118). Plaintiff argues that the ALJ failed to acknowledge her other mental diagnoses and ignored other psychologists' treatment records while failing to reconcile the conflict between the RFC determination and the opinion of consultative psychological examiner Susan Santarpia, Ph.D. ("Dr. Santarpia"). *Id*. Plaintiff further argues that because her mental impairment was significant enough to interfere with her functioning, it caused more than minimal limitations on her ability to perform work activities, and therefore, met the *de minimis* standard under step two of the sequential analysis. *Id*. at 21 (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995) (finding that a threshold determination of severity at step two could do no more than screen out *de minimis* claims). As the ALJ explained, Plaintiff's medical findings were inconsistent with a severe mental impairment. Tr. 118. The Court agrees.

In support for her argument that she had a severe mental impairment, Plaintiff cites to her diagnoses and treatment of record, particularly the opinion of Dr. Santarpia. *See* ECF No. 12-1 at 21. However, "[t]he mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment, is not, by itself, sufficient to render a

---

[2] Although the ALJ decision refers to PA DiRienzo as "Joseph Dirienzo, M.D.," the record indicates that Joseph DiRienzi is a physical therapist, not a medical doctor. *See, e.g.*, Tr. 950-51.

5

condition severe." *Ryan v. Colvin*, No. 15-CV-74S, 2017 WL 2240256, at *3 (W.D.N.Y. May 23, 2017) (citing *Flanigan v. Colvin*, 21 F. Supp. 3d 285, 300 (S.D.N.Y. 2014) (internal quotation and punctuation omitted)). Furthermore, Plaintiff bears the burden of showing that she suffers from a severe impairment that renders her disabled. *Id.* (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984). Plaintiff argues that Dr. Santarpia's findings indicated that she had more than minimal limitations in her ability to perform work activities. *See* ECF No. 12-1 at 21-22. However, Plaintiff's argument ignores the ALJ's detailed discussion of the record showing that the ALJ considered Plaintiff's diagnoses, prescribed medications, and treatment. Tr. 118-19.

The ALJ noted that Plaintiff had not been hospitalized, but she had received therapy for her mental impairments. Tr. 118. In October 2015, Plaintiff was noted to have no previous significant psychiatric history or treatment. Tr. 988. As noted by the ALJ, Plaintiff's complaints primarily focused on difficulty sleeping, which improved with the use of medication. Tr. 118, 987-88, 1273, 1366, 1429. The record also indicates that Plaintiff refused anti-depressant medications. Tr. 988. Plaintiff's mental health symptoms were also noted as situational in nature due to her pain, strain in her marriage, lack of sexual activity, and being out of work. Tr. 960, 988-99, 1010, 1379, 1429. In a psychiatric treatment note dated October 19.2015, it was reported that Plaintiff did not appear to be clinically depressed and her symptoms were noted as "specifically situational" and "linked to a specific stressor." Tr. 988. "Situational stressors are not a basis for a finding of disability and may be considered when evaluating a claimant's subjective reports." *Taillon v. Comm'r of Soc. Sec.*, No. 17-CV-6812, 2019 WL 1396837, at *4 (W.D.N.Y. Mar. 28, 2019) (citing *Morgan v. Colvin*, No. 14-CV-0549, 2016 WL 3527906, at *15 (N.D.N.Y. June 23, 2016); *see also Gonzalez v. Comm'r of Soc. Sec.*, No. 6:07-CV-629, 2010 WL 55933, at *5 (N.D.N.Y. Jan. 5, 2010) (The plaintiff's "situational periods of stress" were due to family problems and financial

6

difficulties, rather than her depressive disorder, and therefore supported the ALJ's conclusion that plaintiff's claims regarding the extent her mental condition precluded her from working were not credible.).

In July 2015, Dr. Santarpia performed a consultative mental evaluation and assessed Plaintiff with adjustment disorder with mixed anxiety and depressed mood. Tr. 878. She opined that Plaintiff had no limitations in performing simple instructions, maintaining a regular schedule, making appropriate decisions, relating adequately with others, and appropriately dealing with stress within normal limits. In opining that Plaintiff had mild to moderate impairments in learning new tasks and performing complex tasks independently, Dr. Santarpia noted that Plaintiff's "[d]ifficulties [were] caused by stressors" (Tr. 878), which is consistent with other treatment records, as noted above. Following Dr. Santarpia's evaluation, S. Jurgia, Ph.D. ("Dr. Jurgia"), a state agency medical consultant, reviewed the medical records and opined that Plaintiff did not have a severe mental impairment. Tr. 182.

The ALJ gave great weight to these opinions because they were consistent with the medical records and Plaintiff's conservative treatment. *See* Tr. 119, 124. As discussed above, the medical findings were inconsistent as to a severe mental impairment. Tr. 118. Plaintiff appeared alert, oriented, cooperative, and polite with good eye contact, normal speech, clear and goal-directed thought processes, calm motor activity, and intact judgment and insight. Tr. 560, 574-75, 581, 583, 585, 594, 602, 877, 962, 973, 984, 987, 989, 999-1000, 1010-11, 1143, 1162, 1176, 1197, 1211, 1220, 1223-24, 1226, 1229-30, 1253, 1259, 1264-65, 1271, 1275, 1281, 1286, 1346, 1349, 1354, 1366-68, 1378, 1381, 1401-02, 1429, 1432-33, 1435, 1466. Thus, the diagnostic testing and examinations provided support for the ALJ's finding that Plaintiff did not have a severe mental impairment and could perform a reduced range of sedentary work.

Based on the foregoing, the ALJ properly assigned great weight to the opinions of Drs. Santarpia and Jurgia because those opinions are consistent with the evidence showing conservative treatment and other evidence that Plaintiff's condition causes only mild limitations with concentrating, persisting, or maintaining pace, and adapting or managing oneself. Tr. 118. As the regulations explain, when the Commissioner finds that a claimant has none or mild limitations in their understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting or managing oneself, then, generally, the Commissioner will find the mental impairment not severe. *See* 20 C.F.R. § 404.1520a(d)(1). In sum, substantial evidence, in the form of the medical opinions, Plaintiff's conservative medical treatment, and the laboratory and diagnostic testing, supported the ALJ's finding that Plaintiff did not have more than "mild" limitations. Accordingly, the Court finds no error in the ALJ's conclusion that Plaintiff's impairments were not severe under the regulations.

**II.   The ALJ Properly Considered Plaintiff's Physical Limitations.**

Regarding Plaintiff's physical impairments, the ALJ properly relied on the opinions of Donna Miller, D.O. ("Dr. Miller"), and PA Rudzinski. Tr. 122-24). Dr. Miller performed a consultative physical examination on July 22, 2015. Tr. 881-85. During the examination, Plaintiff appeared in no acute distress and exhibited a normal gait and stance; an ability to walk on her heels and toes without difficulty; 75 percent of full squat; and no difficulty getting on and off the examination table and rising from a chair. Tr. 883. Plaintiff had full ranges of motion in her shoulders, elbows, forearms, wrists, hips, knees, and ankles; and decreased lumbar and cervical ranges of motion. Tr. 884. She demonstrated full strength, full grip strength, intact hand and finger dexterity, and no sensory deficits. *Id*. Dr. Miller opined that Plaintiff should avoid pulmonary irritants and had mild limitations in repetitive kneeling and squatting. Tr. 885. The ALJ found this

8

opinion entitled to "some weight" and found that Plaintiff could not be exposed to environmental irritants. Tr. 119, 124. In addition, the ALJ indicated she gave Plaintiff "the benefit of the doubt" regarding her physical limitations, finding greater kneeling and squatting limitations. Tr. 119, 122, 124, 885.

On September 23, 2014, Plaintiff had a compensation and pension examination by PA Rudzinski at a Veterans Affairs ("VA") health facility. Tr. 660. During the examination, Plaintiff had reduced ranges of motion, full strength, intact sensations, and negative straight leg raising testing. Tr. 662-66, 673. PA Rudzinski opined that Plaintiff's impairments could significantly limit her functional ability during flare-ups or when the joint was used repeatedly over a period of time. Tr. 669, 676. Thereafter, Plaintiff started physical therapy for her knees. Tr. 624, 635, 637, 640, 650. In December 2014, Plaintiff began receiving mental health therapy at the VA for depression related to her pain. Tr. 520, 626, 628. In January 2015, Plaintiff told the VA that she had scheduled her last day of work for February 13, 2015, her alleged onset date. Tr. 276, 608. In October 2015, Plaintiff returned to the VA for follow up regarding her lumbar pain. Tr. 1008. She had intact ranges of motion with pain on changing from flex to erect and full strength. Tr. 1009. There is also a notation of left S1 radiculopathy with no motor deficit. *Id*. A subsequent lumbar x-ray showed no significant bony abnormality. Tr. 886.

Upon review of the record, the Court finds that the ALJ properly evaluated PA Rudzinski's November 2015 opinion. Tr. 123, 1108. PA Rudzinski opined that Plaintiff could perform sedentary work with sitting for five to ten minutes at a time. Tr. 1108. Consistent with the opinion, the ALJ limited Plaintiff to sedentary work, but found that Plaintiff could sit for at least 45 minutes before repositioning. Tr. 119, 123.

The ALJ also properly evaluated PT DiRienzo's opinion based on a functional capacity evaluation. Tr. 122, 124, 949-50. Plaintiff contends that PT DiRienzo's opinion is entitled to consideration as an opinion from a treating physician because Dr Rajaee co-signed the opinion. *See* ECF No. 12-1 at 25-27 (citing Tr. 951). Even assuming the co-signature elevates the opinion to that of a treating physician, the ALJ explained her reasons for giving the opinion little weight. Tr. 124. A treating physician's opinion is entitled to controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic technique and is not inconsistent with the other substantial evidence in the record." *See* 20 C.F.R. § 404.1527(c)(2). In this case, PT DiRienzo's opinion is not well supported. The examination lasted a little over an hour, and PT DiRienzo stated the assessment of Plaintiff's functional abilities was based on Plaintiff's performance and subjective input. Tr. 949-50. However, PT DiRienzo did not indicate what tests were administered or how Plaintiff performed on those tests. Tr. 949-50. Nor did PT DiRienzo specifically identify Plaintiff's subjective input. *Id.* As such, the Court finds the opinion is not "well supported," but instead is a conclusory opinion without any citation to any objective or subjective basis. *See* 20 C.F.R. § 404.1527(c)(2)-(3).

The ALJ also properly found the limitations in PT DiRienzo's opinion to be inconsistent with other evidence in the record. *See* 20 C.F.R. § 404.1527(c)(4). The ALJ observed that Plaintiff had an ability to sit for more than five minutes at a time. Tr. 163, 950. Consistent with the ALJ's finding that the lumbar MRI findings did not support such limitations, Plaintiff's medical providers similarly found the findings inconsistent with Plaintiff's subjective complaints. Tr. 124, 989, 993, 1185, 1188, 1347, 1350, 1431, 1434, 1473-74. The ALJ also properly acknowledged that the opinion was based on Plaintiff's subjective allegations that were inconsistent with the record. Tr. 121, 124. Although Plaintiff argues this is not a proper basis to discount PT DiRienzo's opinion

(*see* ECF No. 12-1 at 26-27), the Second Circuit Court of Appeals has held to the contrary. *See Gates v. Astrue*, 338 F. App'x 46, 49 (2d Cir. 2009) ("If the [Commissioner's] findings are supported by substantive evidence, the [C]ourt must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.") (internal citations omitted); *see also Matta v. Astrue*, 508 Fed. App'x. 53, 57 (2d Cir. 2013) (acknowledging that the ALJ can discount the opinion of a treating physician when it is inconsistent with other parts of the record). In this case, the ALJ properly evaluated PT DiRienzo's opinion, even if the opinion is considered to be an opinion from a treating physician.

The record also indicates that Plaintiff received conservative treatment for her physical impairments. Tr. 121-22. She received physical therapy, epidural steroid injections, medial branch blocks, and a TENS unit. Tr. 121-22, 456-57, 556, 570, 572, 576, 624, 635, 637, 640, 650, 740, 743, 749, 753, 757, 759, 769, 870, 955. She also did not require surgery or hospitalizations for her allegedly disabling impairments. Plaintiff was prescribed oxycodone for her pain, but she sporadically took the medication. Tr. 1159, 1184, 1188). She testified that the medication made her drowsy, but she denied any side effects to the medical provider prescribing the medication. Tr. 153, 156, 1252.

The laboratory and diagnostic testing also supported the ALJ's evaluation of Plaintiff's physical impairments. Tr. 117-18, 121-24. Inconsistent with Plaintiff's allegations, her physical examinations revealed full strength and intact sensations (Tr. 117-18, 121-24, 575, 884, 1009, 1162, 1176, 1197, 1211, 1230, 1264, 1276, 1350, 1361, 1389, 1405, 1433, 1466); hip x-rays showed mild degenerative changes (Tr. 117, 468-69); and bilateral knee x-rays demonstrated minimal degenerative changes (Tr. 117-18, 464). An EMG showed left S1 radiculopathy (Tr. 121, 409, 993), and a lumbar MRI, prior to her alleged onset date and while performing her past relevant

work, revealed mild facet and ligamentous hypertrophy without canal stenosis or neural foramina narrowing (Tr. 121, 123, 461). A November 2016 lumbar MRI showed that Plaintiff's condition had remained stable since the earlier MRI. Tr. 1473-74. Thus, the objective imaging does not show a deterioration of Plaintiff's condition since she performed her past relevant work. Furthermore, Plaintiff's medical providers considered the physical examinations and history "equivocal" regarding the possible lumbar radiculopathy. Tr. 993, 1188, 1350, 1434.

Based on the foregoing, Plaintiff fails to demonstrate that it was unreasonable for the ALJ to reach her conclusions in assessing her RFC. After careful review of the record, the Court finds the ALJ appropriately considered the evidence, including the medical opinions, Plaintiff's conservative medical treatment, and the laboratory and diagnostic testing. Accordingly, the ALJ's evaluation of Plaintiff's impairments and the resulting RFC was supported by substantial evidence.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF Nos. 15) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE